UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAHSUME I.,

                              Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant.

Case No. 23-10380
Honorable Stephen J. Murphy, III
Magistrate Judge Elizabeth A. Stafford

_____

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT [ECF NOS. 12, 14]**

_____

Plaintiff Mahsume I. appeals the final decision of defendant
Commissioner of Social Security (Commissioner), which denied her
application for supplemental security income (SSI) under the Social
Security Act.  Both parties have filed summary judgment motions, referred
to this Court for a report and recommendation under 28 U.S.C.
§ 636(b)(1)(B).  After review of the record, the Court **RECOMMENDS** that:

- Plaintiff's motion, ECF No. 12, be **GRANTED**;

- the Commissioner's motion, ECF No. 14, be **DENIED**; and

- the Commissioner's decision be **REMANDED** under sentence
  four of 42 U.S.C. § 405(g).

## I.   Background

### A. Plaintiff's Background and Disability Application

Born in January 1976, plaintiff was 44 years old when she applied for SSI in January 2020.  ECF No. 6-1, PageID.3542.  She had no past relevant work.  *Id.*, PageID.42.  Plaintiff claimed disability from fibromyalgia, depression, anxiety, abdomen pain, ganglion cyst, and elevated lipase.  *Id.*, PageID.35-36, 83.

After the Commissioner denied her disability application initially, plaintiff requested a hearing, which took place in December 2021.  *Id.*, PageID.33.  Plaintiff and a vocational expert (VE) testified at the hearing, but the ALJ found plaintiff not disabled.  *Id.*, PageID.33-80.  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  *Id.*, PageID.19-21.  Plaintiff timely filed for judicial review.  ECF No. 1.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."
42 U.S.C. § 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 416.920(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC) and will find the claimant not disabled if he or she can still do past relevant work. *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).

the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14

F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that plaintiff was not

disabled.  At the first step, he found that plaintiff had not engaged in

substantial gainful activity after the alleged onset date of July 31, 2019.

ECF No. 6-1, PageID.33.  At the second step, the ALJ found that plaintiff

had the severe impairments of depression, anxiety, and post-traumatic

stress disorder (PTSD).  *Id.*, PageID.35-36.  Next, the ALJ concluded that

none of plaintiff's impairments, either alone or in combination, met or

medically equaled the severity of a listed impairment.  *Id.*, PageID.36-37.

Between the third and fourth steps, the ALJ found that plaintiff had

the RFC to perform a full range of work at all exertional levels, except

> she must avoid work at unprotected heights or around
> dangerous moving machinery; there should be no driving in
> the course of employment; she has the ability for simple,
> routine, and repetitive tasks with an SVP of 1 or 2; she has
> the ability for routine work that does not require changes in
> work settings or duties more than once a month; she must
> avoid work with the general public except for superficial
> contact; she must avoid work at a fast production pace
> where the pace is set by others, such as assembly line or
> conveyor belt work; and she has the ability to learn by
> demonstration.

*Id.*, PageID.38.  At step four, the ALJ found that plaintiff had no past

relevant work.  *Id.*, PageID.42.  At the final step, after considering plaintiff's

4

age, education, work experience, RFC, and the testimony of the VE, the ALJ found that plaintiff could perform jobs that are available in the national economy, including as a dishwasher, night cleaner, laundry worker, garment sorter, warehouse checker, housekeeper, and inspector/packer. *Id.*, PageID.43.

## II.   Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations.  And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, this Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up).  The substantial-evidence standard does not permit the Court to independently weigh the evidence.  *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and

substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion."); *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.") (cleaned up).

Plaintiff argues that the ALJ improperly assessed her fibromyalgia under Social Security Ruling (SSR) 12-2p; unduly relied on "unremarkable" objective findings; and formulated an RFC that is not supported by substantial evidence.  ECF No. 12, PageID.1226.  The Court agrees.

**B.**

At step two, the ALJ did not find plaintiff's fibromyalgia to be a severe impairment, focusing on her tender points evaluations.  ECF No. 6-1, PageID.36.  But if an ALJ determines that any of a claimant's impairments are severe, he or she must "consider the limitations and restrictions imposed by *all* of an individual's impairments, even those that are not severe." *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x. 593, 597 (6th Cir. 2018) (cleaned up).  Because the ALJ found severe impairments at step two, his failure to find plaintiff's fibromyalgia severe is "legally irrelevant" if

6

he considered any limitations from that impairment.  *Anthony v. Astrue*, 266
F. App'x 451, 457 (6th Cir. 2008).

Plaintiff argues that the ALJ did not properly evaluate her fibromyalgia
under SSR 12-2p at step two.  ECF No. 12, PageID.1234-1235.  She
contends that while tender point evaluations are one option for assessing
whether a claimant has an impairment of fibromyalgia, she meets a second
set of criteria.  *Id.*  Plaintiff is correct that besides tender point evaluations,
SSR 12-2p provides that the ALJ  "may find that a person has a[ ]
[medically determinable impairment] of [fibromyalgia] if he or she has all
three of the following criteria":

1. A history of widespread pain (see section II.A.1.);
2. Repeated manifestations of six or more FM symptoms,
   signs, or co-occurring conditions, especially manifestations
   of fatigue, cognitive or memory problems ("fibro fog"),
   waking unrefreshed, depression, anxiety disorder,
   or irritable bowel syndrome; and
3. Evidence that other disorders that could cause these
   repeated manifestations of symptoms, signs, or co-
   occurring conditions were excluded (see section II.A.3.).

SSR 12-2p, 2012 WL 3104869 at *3 (July 25, 2012).

The "criteria are intended to ascertain whether the claimant's
impairment is *medically determinable*, not whether it is *severe.*"  *Truran v.
Comm'r of Soc. Sec.*, No. 2:16-CV-10862, 2017 WL 4925604, at *5 (E.D.
Mich. June 27, 2017), *adopted*, 2017 WL 3613970 (E.D. Mich. Aug. 23,

2017) (emphasis in original).  For fibromyalgia to be found a "severe" impairment at step two, it must be a "medically determinable impairment" that causes more than a "slight abnormality."  20 C.F.R. § 416.924(c).

The ALJ first included fibromyalgia among impairments that caused no more than minimal limitations based on the "objective medical findings in the record."  ECF No. 6-1, PageID.36.  But when specifically addressing plaintiff's alleged fibromyalgia, the ALJ seemed to conclude that plaintiff had no medically determinable fibromyalgia: "With regard to the claimant's fibromyalgia, I note that this condition has been diagnosed by history, with her providers regularly noting somatic symptoms, but the record failing [sic] to demonstrate consistent tender point evaluations that would reflect the severity necessary for a finding [sic] fibromyalgia."  *Id*.  By addressing only plaintiff's tender point evaluations and not the other criteria under SSR 12-2p, the ALJ committed reversible error.  "An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (cleaned up).

And more generally, the ALJ placed undue weight on objective medical evidence when evaluating plaintiff's fibromyalgia.

8

## C.

As noted, the ALJ found at step two that plaintiff's claim of severe fibromyalgia was unsupported by the objective medical evidence.  ECF No. 6-1, PageID.36 (citing PageID.355-377, 378-401, 471-483, 695-741).  The ALJ continued to fixate on objective evidence when evaluating medical opinions.  State agency consultants Francis Grubelich, M.D., and Saadat Abbasi, M.D., found that plaintiff was not disabled and required no exertional limitations.  *Id.*, PageID.82-96, 98-109.  Disagreeing, plaintiff's primary care physician, Bassel Atasi, M.D., stated in an April 2021 opinion that plaintiff had fibromyalgia and needed help with "bathing, grooming, dressing, mobility, taking medications, meal preparation, shopping, laundry, and housework."  *Id.*, PageID.624.  He contended that plaintiff could not "hold any job."  *Id*.

The ALJ found persuasive the state agency consultant's opinions, citing plaintiff's "typically unremarkable clinical evaluations."  *Id.*, PageID.40.  And the ALJ rejected as unpersuasive Dr. Atasi's opinion, stating it was "not supported by sufficient explanation or citation to objective and clinical findings" and "not consistent with other evidence of record."  *Id.*, PageID.41.  The ALJ believed that Dr. Atasi's opinion was "largely based on the claimant's subjective reports" and contradicted her and "regular

9

reports of normal musculoskeletal, neurological, and psychiatric findings."
*Id.*

The ALJ's emphasis on the lack of objective findings violates binding precedent going back more than 30 years.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243-46 (6th Cir. 2007); *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988); *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003); *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 864 (6th Cir. 2011).  Over and over, courts have emphasized that "the absence of objective medical evidence to substantiate the diagnosis of fibromyalgia or its severity is basically irrelevant, and more 'aggressive' treatment is not recommended for fibromyalgia patients."  *Kalmbach*, 409 F. App'x at 864.

In *Rogers*, a seminal opinion about consideration of disability claims involving fibromyalgia, the court found that the ALJ erred by relying on the opinion of the state agency expert instead of the plaintiff's treating physicians, including a treating rheumatologist.  486 F.3d at 244-46.  The court emphasized that treating physicians' opinions were "of special significance given the unique nature of fibromyalgia," and criticized the ALJ for relying on the opinions of doctors who had not examined the plaintiff.  *Id.* at 245.  The court also noted that "the foundation for the opinions

offered" by those non-examining physicians "was the lack of objective findings."  *Id.*  "[I]n light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant."  *Id.*  The *Rogers* ALJ had also wrongly relied on the lack of corroborating objective evidence to find the claimant's subjective complaints not fully credible.  *Id.* at 246-48.

As in *Rogers*, plaintiff's treating physicians had documented evidence supporting his diagnosis of fibromyalgia.  Starting in July 2019, Dr. Atasi noted that plaintiff had "tenderness on palpation of most of her joints, including spine, paraspinal muscles, and everywhere else."  ECF No. 6-1, PageID.369.  In examinations later that year, Dr. Atasi noted her "multitude of chronic symptoms that seem to be somatic in nature," including joint and abdominal pains.  *Id.*, PageID.362.  Dr. Atasi struggled to find medication that would alleviate plaintiff's symptoms.  *Id.*, PageID.355, 363, 386.  She also tried Effexor.  *Id.*, PageID.355.

Plaintiff also consulted Jasmine Stannard, M.D., a rheumatologist. *Id.*, PageID.440-464.  Dr. Stannard reviewed x-rays of plaintiff's knees, hands, cervical spine, and SI joints to rule out other disorders that would cause pain.  *Id.*, PageID.458.  The x-rays were unremarkable, but plaintiff reported that her pain was "severe, worse with use and activity, throughout

her entire body." *Id.*  Dr. Stannard concluded that plaintiff's "presentation is consistent with fibromyalgia." *Id.*, PageID.460.  In other words, the unremarkable x-rays were *consistent* with fibromyalgia.  But when stating that Dr. Atasi's opinion was "largely based on claimant's subjective reports, rather than objective or clinical findings," the ALJ failed to mention Dr. Stannard's findings.  *Id.*, PageID.41.  This omission underscores the ALJ's error.  *See Rogers*, 486 F.3d at 245 ("[U]nlike the non-treating physicians upon whose testimony and reports the ALJ placed great emphasis, Dr. Stein is a rheumatologist, and thus a specialist in the particular types of conditions Rogers claims to suffer from.").

Dr. Atasi's opinion that plaintiff "needed help" with various tasks is not a "medical opinion," which the regulations define as "a statement from a medical source about what you can still do despite your impairment(s)."  20 C.F.R. § 404.1513(a)(2).  And Dr. Atasi's opinion that plaintiff could not work addressed an issue reserved for the Commissioner.  20 C.F.R. § 416.920b(c)(3)(i).  But as in *Rogers*, the ALJ committed reversible error by relying only on objective evidence to evaluate whether plaintiff had severe, medically determinable fibromyalgia and to evaluate the medical opinions.

In another echo of *Rogers*, the ALJ discounted the credibility of plaintiff's reported subjective symptoms by relying on the "unremarkable" musculoskeletal and neurological findings.  ECF No. 6-1, PageID.36, 40-42 (citing PageID.82-96, 98-109, 360-361, 369).  The ALJ also found unpersuasive the corroborating third-party statements of Carolyn Scorpio, plaintiff's caseworker; Khashayar Penkar, a translator; and Parisa Khaliki, plaintiff's daughter.  *Id.*, PageID.41-42.

Scorpio claimed that plaintiff "has body pain and is unable to stand for long periods of time."  *Id.*, PageID.285.  Khaliki testified that plaintiff had significant physical limitations, and Penkar stated that plaintiff had difficulties with lifting, squatting, bending, sitting, and kneeling.  *Id.*, PageID.42 (citing PageID.324-331).  The ALJ found those third-party statements unpersuasive because they conflicted with "the largely unremarkable physical" records, including "objective and clinical examination findings."  *Id.*, PageID.41-42.

Because the ALJ relied on irrelevant objective evidence when evaluating plaintiff's fibromyalgia, her alleged subjective symptoms, and the medical and nonmedical opinions, his decision is not supported by substantial evidence.  *Rogers*, 486 F.3d at 244, 249-50.

### III. CONCLUSION

The Court **RECOMMENDS** that plaintiff's motion, ECF No. 12, be

**GRANTED**; that the Commissioner's motion, ECF No. 15, be **DENIED;** and

that the ALJ's decision be **REMANDED.** The ALJ should be instructed to

reassess plaintiff's RFC with consideration of her fibromyalgia in a manner

that follows the regulations, including SSR 12-2p and the case law.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: January 30, 2024

### NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation,

any party may serve and file specific written objections to this Court's

findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b)(2). If a party fails to timely file specific objections, any further appeal

is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*. And

only the specific objections to this report and recommendation are

preserved for appeal; all other objections are waived. *Willis v. Secretary of

HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this report and

recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 30, 2024.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
